# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
708 Third Avenue – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102
Email: info@jcpclaw.com

March 25, 2019

**BY ECF**

Hon. Henry B. Pitman, U.S.M.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        *Re:*    *Rochford v. My First Step Enrichment Program 2 Inc., et al.*
                *Case No. 18-CV-4107 (HBP)*

Dear Judge Pitman,

      We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter together with the defendants for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel, with the assistance of this Court at a January 9, 2019 settlement conference.

        **I.**    ***The Need for the Court's Approval of the Agreement***

      As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II. Plaintiff's Claims for Unpaid Wages

Defendants own and operate a child daycare located at 1323 Clinton Avenue in the Bronx. Plaintiff alleges that she was hired as an assistant on or about February 6, 2017 and continued to work in that capacity until on or about April 18, 2018, at which time she alleges that the defendants terminated her employment upon learning that she was seeking legal representation in regard to her claim that the defendants failed to pay her proper wages.

Plaintiff contends that she typically worked five (5) days per week and, although her work shift fluctuated slightly each week, she normally worked from 8:00 a.m. until 6:00 p.m., thereby working approximately fifty (50) hours per week.

Defendants dispute that plaintiff worked overtime. According to the Defendants' time sheets, plaintiff normally worked from 9:00 a.m. until 6:00 p.m. most days, with a one-hour break, thereby working, at most, forty (40) hours per week. Plaintiff disputes taking the break most days, or at most taking only a 30-minute break because she was often left as the only person watching the children assigned to her.

With respect to her pay, plaintiff contends that she was paid at the rate of $10.50 per hour except for the last three (3) weeks of her employment when she was paid $12 per hour. It is plaintiff's position that her Earning Statements also reflect that there were at least (7) weeks of her employment where she was paid at her straight time regular rate of pay for all hours worked despite working in excess of forty (40) hours per week. It is the defendants' position that any error in failing to pay whatever limited overtime may have been worked was unintentional and was subsequently rectified.

Plaintiff further maintains that the records also reflect that she was paid at the improper minimum wage rate of $10.50 for thirteen (13) weeks in 2018 when she should have been paid at statutory rate of $12 per hour, as required of employers in New York City with fewer than eleven (11) employees. Again, it is the defendants' position that any error in failing to pay plaintiff at the then-current minimum wage rate during the initial part of 2018 (after the rate change) was unintentional and was subsequently rectified.

Plaintiff also asserted a claim for retaliatory discharge against the defendants. It is plaintiff's position that she was terminated after complaining about her unpaid wages and informing the defendants that she was in the process of retaining counsel to represent her. More specifically, it is plaintiff's contention that after being advised of plaintiff's anticipated legal action, the defendants used an alleged subsequently occurring "incident" between herself and a minor daycare child as an excuse to terminate plaintiff despite the fact the defendants allegedly acknowledged that plaintiff did not engage in any wrongdoing and that no harm came to the child. Defendants dispute plaintiff's claim of retaliatory discharge, and assert that the decision to terminate plaintiff's employment was based on legitimate business reasons, including the plaintiff's failures to report for work as expected, the plaintiff's insubordination, and the plaintiff's mishandling of a minor

Hon. Henry B. Pitman, U.S.M.J.
March 25, 2019
Page 3

child in her care. This last event occurred on the final day that plaintiff worked prior to her discharge. While the minor child may not have been harmed, plaintiff's conduct in respect of this incident nevertheless violated the defendants' policies and practices regarding child care, and was independent grounds for plaintiff's dismissal.

Based on those allegations, plaintiff calculated that she is owed approximately $1,147.51 in unpaid minimum wages and overtime compensation with an equal amount in liquidated damages. Plaintiff contends that she should be entitled to the maximum amount of statutory damages for retaliatory discharge in the amount of $20,000, *see* 12 N.Y.C.R.R. § 215, together with compensatory damages in the amount of approximately $12,000 for lost wages during the six (6) months following her termination for which she was unable to obtain similar work. Together with statutory damages for the defendants' alleged failure to provide a wage notice, the total value of plaintiff's claims amount to approximately $39,000, exclusive of attorneys' fees and interest. Defendants for their part contend that plaintiff was paid properly and that plaintiff did not suffer a retaliatory discharge, and dispute that plaintiff is owed any amounts in damages. Defendants further contend that they provided wage statements and wage notices to plaintiff as required by New York law.

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $10,500 to resolve all of plaintiff's wage and hour claims against the defendants, as well as plaintiff's claim for retaliatory discharge. The settlement is payable over eight (8) installments commencing within ten (10) days after Court approval. We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims.

Moreover, as discussed *infra*, one concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns).

### III.   The Agreement is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra*, 679 F.2d at 1354)).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as with the Court's assistance during a

Hon. Henry B. Pitman, U.S.M.J.
March 25, 2019
Page 4

settlement conference on January 9, 2019. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

In light of various disputes concerning plaintiff's claims this settlement should be approved. First, as mentioned above, the defendants contend that plaintiff rarely worked overtime when discounting her work hours by one (1) hour each day to reflect her daily lunch break. And, as discussed, the defendants maintain that any slight shortfall in overtime compensation was already rectified prior to plaintiff's commencement of the action, which the defendants believe was started solely because of plaintiff's belief that she was wrongfully terminated.

Second, the defendants vehemently dispute that plaintiff was terminated in retaliation for asserting her rights to recover her unpaid wages. To the contrary, the defendants maintain that there are three separate bases for plaintiff's termination: (a) insubordination for airing her complaints on the defendants' online Group Day Care "Chat;" (b) taking an unauthorized personal day off a few days following the alleged "incident" with the minor child, and (c) mishandling of the minor child in violation of the company's policy and behavior management plan. Although plaintiff believes that she would have been able to disprove each of those bases, if a jury were to have found the defendants' version of events more credible, it would have eviscerated plaintiff's retaliation claim, and would have eliminated the statutory and compensatory damages flowing from the claim (an amount potentially in excess of $30,000.00).

Third, as mentioned above, there is a significant concern regarding the defendants' ability to withstand a more substantial settlement or judgment. Defendants operate a small daycare facility that has significant operating expenses, which it is barely able to meet on an ongoing basis. A more substantial settlement or judgment was likely to cause the defendants to seek bankruptcy or to cease operations.

Finally, it is the defendants' position that the corporations do not meet the FLSA's $500,000 doing business threshold (which was demonstrated in their tax returns). Thus, there was a real possibility that this matter could have been pushed into state court, which would have led to a prolonged period of litigation and expenses.

By settling now, plaintiff receives all of her calculated unpaid wages even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in protracted litigation and trial.

### IV.  Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiff, our firm seeks to retain one-third of the gross proceeds of the settlement, while waiving reimbursement of costs and expenses. Therefore, plaintiff's counsel seeks $3,500 in fees. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts, including this Court, have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Yunda v. SAFI-G, Inc.*, No. 15 Civ. 8861 (HBP), 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. Apr. 28, 2017) (approving a percentage fee one-third of settlement amount in FLSA settlement as "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Romero v. ABCZ Corp.*, 14 Civ. 3653 (HBP), 2017 U.S. Dist. LEXIS 90137 (S.D.N.Y. June 12, 2017) (same); *Aquino v. Fort Washington Auto Body Corp.*, No. 16 Civ. 390 (HBP), 2017 U.S. Dist. LEXIS 78344 (S.D.N.Y. May 23, 2017) (same); *Velasquez v. Little Mex. Wholesale, Inc.*, No. 15 Civ. 5818 (HBP), 2016 U.S. Dist. LEXIS 157210 (S.D.N.Y. Nov. 14, 2016) (same); *Garcia v. YSH Green Corp.*, No. 16 Civ. 532 (HBP), 2016 U.S. Dist. LEXIS 158001 (S.D.N.Y. Nov. 14, 2016) (same); *Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement).

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

Hon. Henry B. Pitman, U.S.M.J.
March 25, 2019
Page 6

      We thank the Court for its continued attention to this matter.

                                   Respectfully submitted,

                                   Justin Cilenti

cc: Defense Counsel (by ECF)